James C. YOUNG, et al., Plaintiffs,

v.

**WEST COAST INDUSTRIAL RELATIONS ASSOCIATION, INC., et al., Defendants.**

Civ. A. No. 88–692 LON.

United States District Court, D. Delaware.

Oct. 8, 1992.

Perry F. Goldlust, of Heiman, Aber & Goldlust, Wilmington, Del., of counsel: Hugh J. Beins (argued), John R. Mooney and Jonathan G. Axelrod, of Beins, Axelrod, Osborne & Mooney, Washington, D.C., for plaintiffs.

Michael B. McCauley, of Palmer Biezup & Henderson, Wilmington, Del., of counsel: Martin E. Crandall (argued) of Stringari, Fritz, Kreger, Ahearn, Hunsinger, Bennett

& Crandall, Detroit, Mich., for defendant West Coast Indus. Relations Ass'n, Inc.

Robert F. Stewart, Jr., Ronald F. Kidd, Teresa N. Cavenagh, of Duane, Morris & Heckscher, Wilmington, Del., for remaining defendants.

## OPINION

### LONGOBARDI, Chief Judge.

The amended complaint in this case,[1] Docket Item ("D.I.") 4, alleges violations of the Racketeer Influenced and Corrupt Organizations provisions of the United States Code, 18 U.S.C. § 1961, *et seq.* ("RICO"), and tortious interference with contract rights in violation of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and state common law. On April 17, 1991, this Court granted Defendants' motions to dismiss. *See Young v. West Coast Industrial Relations Assn., Inc.,* 763 F.Supp. 64 (D.Del.1991). On April 29, 1991, Defendant West Coast Industrial Relations Association ("West Coast") filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") seeking attorneys' fees and costs. D.I. 45. The Plaintiffs filed a notice of appeal to the Third Circuit on May 16, 1991. D.I. 49. The Third Circuit affirmed. *Young v. West Coast Industrial Relations Assn., Inc.,* 961 F.2d 1570 (3rd Cir.1992). A hearing on Defendant West Coast's motion for sanctions was held by this Court on July 9, 1992. The motion for sanctions is presently before the Court.

In *Pensiero, Inc. v. Lingle,* 847 F.2d 90, 100 (3rd Cir.1988), the Court of Appeals for the Third Circuit,

> adopt[ed] as a supervisory rule for the courts in the Third Circuit a requirement that all motions requesting Rule 11 sanctions be filed in the district court before the entry of a final judgment. Where

appropriate, such motions should be filed at an earlier time—as soon as practicable after discovery of the Rule 11 violation. *Id.*

The Defendant in this case filed the motion twelve calendar days and eight working days after the entry of our order of dismissal. The Defendant attempts to place itself beyond the reach of the *Pensiero* rule by arguing generally (1) that the Court's dismissal of Counts I through IV of Plaintiffs' amended complaint and dismissal of the state law claims without prejudice did not constitute a final order, D.I. 51 at 3–4; (2) that the *Pensiero* rule has not been given complete preclusive effect, D.I. 51 at 5; and (3) that because the Defendant brought the sanctions motion within ten days following the dismissal order, it can properly be viewed as a timely motion to alter or amend the judgment. D.I. 51 at 6. Furthermore, at the July 9, 1992 hearing the Defendant argued that its October 3, 1990 letter to the Plaintiffs, wherein the Defendant indicated an intention to file a Rule 11 motion if the Plaintiffs did not dismiss its complaint, was effectively its Rule 11 motion. D.I. 59 at 12–13. Should the Court reject these arguments, Defendant posits that the Court should award costs under 28 U.S.C. § 1927 or its inherent power to award attorneys' fees as neither of these is affected by the *Pensiero* time requirement. D.I. 51 at 7 n. 5; *see also* D.I. 59.

The Defendant argues specifically that there is a distinction between the dismissal of a complaint and the dismissal of an action. They argue that our order dismissed the complaint not the action and, therefore, it was not a final order as is required by *Pensiero*. D.I. 51 at 3–4.[2] In support of this argument, the Defendant asserts that the order includes nothing that

---

1. The complaint was filed December 12, 1988. The amended complaint was filed December 22, 1988.

2. The Court notes that the Defendant referred to our order as "[t]his Court's dispositive opinion in dismissing this action...." at page 5 of its memorandum in support of its motion for sanctions. D.I. 46. We also note that the Defendant

indicated in its August 6, 1991, appellee's brief submitted relative to the Plaintiffs' appeal of our April 17, 1991 order that the Appeals Court had jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, of "... a final order dismissing the Amended Complaint." This brief was entered into the record of this proceeding by the Plaintiffs at the July 9, 1992, hearing.

suggests that the action is dismissed or that the Plaintiffs did not have the opportunity to amend the complaint. Therefore the Defendant argues that the order did not become final until the time for amendment had expired or the Plaintiffs announced their intention to stand on the complaint. *Id.* at 4. The Defendant then indicates that the amendatory period in this instance was ten days, citing Local Rule 3.3 [3] and Federal Rule of Civil Procedure 59(c) [4] and asserts that the motion for sanctions was filed within that time period and thus before final judgment. *Id.* at 4–5. Defendants also cite *Czeremcha v. International Association of Machinists and Aerospace Workers,* 724 F.2d 1552 (11th Cir.1984), as support for the principle that leave to amend under Rule 15 should be liberally granted. D.I. 51 at 5 n. 2.[5]

Federal Rule of Civil Procedure 41(b) relates to the involuntary dismissal of actions and indicates that a "defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, ..., operates as an adjudication upon the merits."

■ Generally, an order which dismisses a cause without an explicit statement that the dismissal was without prejudice is assumed to be dismissal with prejudice, absent a strong showing to the contrary. *See LeBeau v. Taco Bell, Inc.,* 892 F.2d 605, 607 (7th Cir.1989), *Hines v. Delta Air Lines,* 461 F.2d 576, 579 n. 12 (5th Cir. 1972), *Weston Funding Corp. v. Lafayette Towers, Inc.,* 410 F.Supp. 980, 984 (S.D.N.Y.1976) *aff'd,* 550 F.2d 710 (2nd Cir. 1977).

■ The Defendant bases its argument that it filed the motion within the amendatory period on *Borelli v. City of Reading,* 532 F.2d 950 (3rd Cir.1976) (per curium). There the court held that a dismissal without prejudice is not a final order until either the time for amendment has expired or the plaintiff has announced its intention to stand on the complaint. *Id.* at 951. Until then, a decision is neither final or appealable as any deficiency in the complaint may be corrected without affecting the cause of action. *Id.* In our order of April 17, 1991, we indicated that counts I through IV of the Plaintiffs' complaint, *i.e.,* the federal claims, "are hereby dismissed." We then indicated that any surviving state law claims ". . . are dismissed without prejudice so that Plaintiffs may refile them in a state court action." *Young,* 763 F.Supp. at 78. Because we did not explicitly dismiss the federal claims without prejudice, the dismissal was on the merits and with prejudice. *See* Fed.R.Civ.P. 41(b); *LeBeau,* 892 F.2d at 607; *Hines* 461 F.2d at 579. The fact that we dismissed the state law claims without prejudice also indicates that dismissal of the federal claims was with prejudice as we clearly intended thereby to distinguish the federal claim dismissal from the state law dismissal.

In addition, leave to amend was not granted in our April 17, 1991 order nor was such leave intended. *See Borelli,* 532 F.2d at 951 n. 1 (where appropriate, district court judges should expressly state that a plaintiff has leave to amend within a specified period.) Therefore *Borelli* is distinguishable and, pursuant to Rule 41(b), the order was final when entered.

■ Federal Rule of Civil Procedure 59 and Local Rule 3.3 do not affect the finality

---

**3.** The Court notes that Local Rule 3.3 has been replaced by new Local Rule 7.1.4 effective August 1, 1992. The new Local Rules have not materially changed. For the purposes of this opinion, however, the Court will refer to the old Local Rules which were in effect at the time of the action.

**4.** The Court notes that Rule 59(c) relates to the filing of affidavits supporting motions for new trials. The Court construes this reference as intending to refer to Rule 59(b) which relates to

the time limitations for filing a motion for a new trial.

**5.** Federal Rule of Civil Procedure 15(a) indicates that a party may amend its complaint anytime before a responsive pleading is served "[o]therwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires."

of our April 17 order. Rule 59(b) indicates that a motion for a new trial "shall be served not later than 10 days after the entry of the judgement." Rule 59(e) also provides 10 days to file motions to alter or amend judgments and Local Rule 3.3 allows 10 days to file a motion for reargument. The Defendant apparently argues that the order did not become final until the period for a motion for a new trial, a motion for alteration or amendment, or a motion for reargument had expired.

Generally, Rule 4(a)(4) of the Federal Rules of Appellate Procedure indicates that a timely motion to alter or amend or for a new trial under Rule 59 operates to delay the time for appeal until the Court enters an order on the motion. 9 *Moore's Federal Practice 2d* at ¶ 204.12 (1992). This Rule alters the time for appeal only when such motions are made; if no such motions are made, the appeal time is measured from the time of entry of judgment. *Id.* at ¶ 204.12 [1] n. 7 (1992). Because no such motion was filed in this instance, our April 17, 1991 order was a final judgement at the time it was entered. Furthermore, although Appellate Rule 4(a)(4) does not indicate that a motion filed pursuant to Local Rule 3.3 affects the finality and appealability of an order, Rule 3.3 seems sufficiently analogous to the Rule 59 motions specifically affected, *i.e.*, it seeks review of issues previously reviewed, to merit the application of Rule 4(a)(4)'s principles. Therefore, since no motion was filed, the finality of our order was unaffected by this local rule.[6]

The Court also rejects an alternative argument made by the Defendant at the July 9, 1992 hearing that the motion was filed within the period provided by Local Rule 6.3.[7] Local Rule 6.3 clearly relates to motions for attorneys fees not motions for sanctions. Construing this Local Rule as being applicable to motions for sanctions would place the Local Rule in direct conflict with *Pensiero*. Furthermore the Local Rules provide for sanctions separately at Rule 9.2.[8] This distinct treatment indicates that Rule 6.3 is not applicable to a motion for sanctions.

Because the finality of our order was unaffected by Rule 59 or Local Rules 3.3 or 6.3 and the motion for sanctions was not filed until after the entry of our April 17, 1991 order, the motion was not timely filed[9] pursuant to *Pensiero*.[10]

The Court also rejects the Defendants' proposition that the *Pensiero* rule need not be given effect. It is the law of this Circuit, has not been overruled by this Circuit, nor is there any reason why it should be distinguished here. *Pensiero* quite clearly sets out a time frame for filing Rule 11 sanctions and this time frame was to be complied with in this instance.

**6.** See also, 9 *Moore's Federal Practice 2d* ¶ 110.-08(3) (1990).

**7.** Local Rule 6.3 has been replaced by Local Rule 54.3 effective August 1, 1992. Local Rule 6.3 allows up to twenty-one days after the expiration of the time for appeal to file a motion for attorney's fees.

**8.** Local Rule 9.2 has been replaced by Local Rule 1.3 effective August 1, 1992.

**9.** Further, we note that a motion for sanctions, even if timely filed, would not affect the finality of our April 1991 order under *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). In that case, the Supreme Court indicated that a post-judgment motion for attorney's fees, regardless of its basis, does not affect the finality of the judgment or extend the time for appeal. *Id.* at 202, 108 S.Ct. at 1721. The rationale underlying that decision was that a decision on the merits was a final appealable decision even if a collateral issue such as the recoverability of attorney's fees was unresolved because the resolution of that issue will not alter the order or moot or revise decisions embodied in the order. *Id.* Clearly a decision relative to the imposition of sanctions is collateral under *Pensiero* and it will not affect our underlying decision dismissing this complaint on the merits. The finality of the decision on the merits, therefore, is unaffected by the fact that the sanctions issue remains to be decided.

**10.** The Court also rejects the Defendant's argument that its earlier communication with the Plaintiffs wherein it indicated its intention to file a Rule 11 motion unless the Plaintiffs withdrew their complaint either constituted the filing of such motion or put Plaintiffs on notice and somehow eliminated the need for filing such motion. The Defendant offers no authority in support of these arguments nor is the Court aware of any such authority.

■ The Court also rejects the Defendants' argument that we treat the motion for sanctions as a Rule 59(e) motion to amend the judgment. The Defendants did not bring their motion pursuant to Rule 59(e). They captioned their request as a "Motion for Sanctions Pursuant to Rule 11, Federal Rules of Civil Procedure." D.I. 45. The body of the motion alleges that "plaintiffs and their attorneys are in violation of FRCP 11 for bringing the above-captioned baseless Complaint." D.I. 45. The cases from the 7th and 2nd Circuits cited by Defendant [11] as support for its proposition that the Court should construe the motion as one pursuant to Rule 59(e) are factually distinguishable because the defendants in those cases specifically requested that the court amend the judgment pursuant to Rule 59(e).[12]

■ Even had the Defendant denominated the motion for sanctions as a Rule 59(e) motion, it was not the proper subject of such a motion. Generally, motions to reconsider, vacate, set aside or reargue are construed as Rule 59 motions, as are motions to amend the complaint, for rehearing, to dismiss for lack of jurisdiction, to amend judgment to include post judgment interest, to correct the judgment and for a stay. *See 6A Moore's Federal Practice 2d,* ¶ 59.12[1] n. 29–36 (1991). In *White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 450, 102 S.Ct. 1162, 1165, 71 L.Ed.2d 325 (1982), the Supreme Court held that Rule 59(e) had been drafted to make it clear that a District Court has the power to rectify its own mistakes in the period immediately following the entry of judgment as it is only properly invoked to reconsider matters encompassed in a decision on the merits. *Id.* at 450–51, 102 S.Ct. at 1165–66. The Supreme Court found that attorney's fees allowed under 42 U.S.C. § 1988 were not compensation for the injury giving rise to the action and as a collateral issue were inappropriate for consideration under a Rule 59(e) motion. *Id.* at 451,

102 S.Ct. at 1166; *see also Buchanan v. Stanships, Inc.,* 485 U.S. 265, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988) (a motion for costs also involves an issue collateral to the issues considered in the decision on the merits and is inappropriate as a Rule 59(e) motion); and *Fincher v. Keller Industries, Inc.,* 905 F.2d 691 (3rd Cir.1990) (a motion for costs is wholly collateral to the judgment on the merits and, even if mistakenly denominated as a Rule 59(e) motion, it does not toll the time for filing a notice of appeal).

As we noted previously, the Third Circuit has determined that a motion for sanctions is collateral to a decision on the merits. *Pensiero,* 847 F.2d at 98. Therefore, even if the Plaintiffs had filed the motion for sanctions under Rule 59(e), we could not have considered it as a Rule 59 motion and Federal Rule of Appellate Procedure 4(a)(4) would not have tolled the finality of the judgment and the period for appeal. The motion would still have been considered a Rule 11 motion for sanctions and its timeliness determined under the *Pensiero* standard.

■ As to the Defendant's argument that this motion should be construed as a motion for reargument under Local Rule 3.3, we also reject this argument. Implicit in any reargument is the notion that a party seeks to again present certain issues and arguments to the court. As we did not consider or address the sanctions issue in ruling on the motion to dismiss, it is impossible to consider this motion for sanctions as one seeking reargument.

Assuming for the sake of argument that the Court did have jurisdiction and the motion for sanctions had been timely, the Court would alternatively conclude that sanctions should not be entered because the Plaintiffs' RICO and tortious interference claims were not violative of Rule 11 at the time the complaint was filed.

Federal Rule of Civil Procedure 11 requires an attorney to sign every pleading,

---

11. *Beeman v. Fiester,* 852 F.2d 206 (7th Cir. 1988), abrogated 880 F.2d 928 (7th Cir.1989, and *Fisher v. Klein,* 873 F.2d 626 (2nd Cir.1989).

12. Additionally, those courts did not address the propriety of such a Rule 59 motion. As the discussion below indicates, seeking Rule 11 sanctions via a rule 59 motion is erroneous.

motion or other paper of a party represented by an attorney. The signature constitutes certification by that attorney that he or she has read the document; that to the best of the signatory's knowledge the document is well grounded in fact, in existing law or in a good faith attempt to extend existing law; and that the document was not interposed for an improper purpose. If a pleading, motion or other paper is signed in violation of the rule, the court "... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, ... which may include an order to pay ..." reasonable expenses including attorney's fees incurred because of its filing. *See* Fed.R.Civ.P. 11.

■ Generally, sanctions are prescribed "only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 289 (3rd Cir.) (citation omitted), *cert. denied*, ── U.S. ──, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, ──, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991). Reasonableness is defined as an "objective knowledge or belief at the time of the filing of a challenged paper" that the claim is well grounded in law and fact. *Ford Motor Co.* 930 F.2d at 289 (citations omitted). The Rule requires a reasonable inquiry into both the facts and law supporting a particular pleading. *Id.* (citation omitted). Rule 11 sanctions are appropriate only when the filing of the complaint constitutes abusive litigation or misuse of the court's process. *Pensiero* 847 F.2d at 95. (citations omitted). If there is an arguable basis, no matter how tenuous, Rule 11 may not be invoked even when an attorney is unable to produce adequate evidence after discovery to withstand a motion for summary judgment. *Id.* (citation omitted). Rule 11 sanctions are not appropriate where the theory

of the case "while novel and unsuccessful, was not plainly unreasonable." *Id.* (citation omitted).

■ The factors which should be considered in determining the reasonableness of an attorney's pre-filing investigation include: the amount of time available to the signer for conducting the legal and factual investigation; the necessity for reliance on a client for the underlying factual information; the plausibility of the legal position advocated; whether the case was referred to the signer by another member of the bar; and the complexity of the legal and factual issues implicated. *Id.* (citations omitted).

The Defendant argues that sanctions are appropriate because of the Plaintiffs' "complete inability" to meet the threshold RICO requirements as evidenced by this Court's dismissal of their claims, D.I. 46 at 4–5, and the Court's conclusion that the complaint failed to allege any deception. *Id.* at 5. The Defendant also cites in support of the motion for sanctions this Court's April, 1991 findings relative to the embezzlement claims and the alleged insufficiency of the correspondence the Plaintiffs introduced as evidence of the scheme. *Id.*

In countering the motion for sanctions, the Plaintiffs argue that the complaint asserts that the Defendants operated an employer enterprise through a pattern of racketeering activity in violation of RICO section 1962(c) consisting of violations of the federal embezzlement, mail fraud and wire fraud statutes, all of which Plaintiffs allege were in furtherance of the scheme to defraud the Plaintiffs of their rights under their employment contracts. D.I. 50 at 6. The Plaintiffs argue that a basis in law exists for such action under *United States v. Boffa*, 688 F.2d 919 (3rd Cir.1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983).[13] D.I. 50 at 6.

More specifically, the Plaintiffs argue that the technical requirements for a RICO claim are met because there was a distinction between the named RICO Defendants and the specified enterprise and that they

---

**13.** In *Boffa,* the court concluded that a scheme to defraud employees of economic benefits attendant to their contract lies within the ambit of the mail fraud statute. 688 F.2d at 930.

properly pled predicate acts, that is mail fraud, wire fraud and embezzlement, which constituted a pattern of racketeering activity. D.I. 50 at 7. The Plaintiffs assert that the mail and wire fraud violations consisted of a series of letters which were part of a larger scheme and which were designed to defraud the Plaintiffs in the collective bargaining process and to deprive them of their contractual rights, and which at least constituted overreaching. *Id.* at 8. At the July 9, 1992 hearing, the Plaintiffs argued that in essence their complaint asserted that these mail and telephone communications were part of the Defendants' larger scheme to deceive the Plaintiffs by engaging in apparent good faith labor negotiations while intending to force an impasse, hire replacement workers, and thereby eliminate the union. *See Hearing Transcript,* D.I. 59 at 20–21. Further, the Plaintiffs assert that they properly pled the existence of a pattern of racketeering activity consistent with the standards at the time the complaint was filed. D.I. 50 at 9.

With respect to their tortious interference with contract claim, the Plaintiffs assert that their complaint was proper pursuant to *Wilkes–Barre Publishing Co. v. Newspaper Guild, Local 120,* 647 F.2d 372, 379 (3rd Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982) (claim for tortious interference with collective bargaining contract is not pre-empted), and *Mack Trucks, Inc. v. United Auto, Aerospace, and Agr. Implement Workers,* 856 F.2d 579, 585 (3rd Cir.1988), *cert. denied,* 489 U.S. 1054, 109 S.Ct. 1316, 103 L.Ed.2d 585 (1989) (a court retains jurisdiction to decide section 301 actions even if the claim may also constitute an unfair labor practice under the NLRA). D.I. 50 at 10–11. Further, the Plaintiffs argue that the principle that a party cannot tortiously interfere with a contract to which it is a party is not applicable here as there were three separate contracts with three separate employers. *Id.* Finally, since there has been no discovery, Plaintiffs argue that their theory of the case must be accepted. *Id.*

In its reply, the Defendant asserts that *Boffa* is irrelevant here because, as this

Court noted in its dismissal opinion, the Plaintiffs failed to assert a predicate act, that is, the complaint failed to allege anything indicating that deceit by way of a misrepresentation, deceitful omission or other deceptive practice was involved. D.I. 51 at 7. The Defendant also points out that the Plaintiffs' attorney was involved in the labor negotiations and most of the communications involved, did not have to rely on a client for information and had ample opportunity to conduct a thorough factual and legal investigation into the alleged fraud. *Id.* at 7–8. Also, the Defendant cites to *O'Malley v. New York City Transit Authority,* 896 F.2d 704 (2d Cir.1990), as an instance where sanctions were ordered in a RICO action. The Defendant asserts that the documents relied on by the Plaintiffs here were analogous to those in *O'Malley* which that court found to be routine, innocuous business communications. D.I. 51 at 8. The Defendant argues that the *O'Malley* court indicated that the difficulty courts have had in defining the parameters of the RICO concepts of "pattern" and "enterprise" is not alone justification for refusing to impose sanctions for a baseless complaint. *Id.* The Defendant also notes that the *O'Malley* court indicated that sanctions were further necessitated by the fact that at the pretrial conference the plaintiffs had received advice from the Magistrate to withdraw their suit and indications from the defendants that if they continued the lawsuit that the defendants would move for sanctions. *Id.* at 9. The Defendant argues that this Court made similar remarks to the Plaintiffs during a telephone conference related to the motion to dismiss. *Id.*

As to the embezzlement claim, the Defendant asserts that this Court's comments about a "troubling" theory of embezzlement in our April 17, 1991 opinion supports its contention that this claim was baseless and thereby supports its motion for sanctions. As to the tortious interference claim, the Defendant cites in support of its argument our order which indicated that third parties such as the Defendant here are not liable for tortious interference

claims where they are agents of a party to the contract. D.I. 51 at 10.

In the April 17, 1991 order, we dismissed the complaint because we concluded it failed to allege any deceptive practices or omissions as required by the mail and wire fraud statutes and alternatively because the complaint failed to allege a pattern of racketeering activity sufficient to meet the then recognized RICO standards. *See Young*, 763 F.Supp. at 74. Furthermore, we concluded that the embezzlement claims were insufficient because we found them to contain a "novel theory of embezzlement." *Id.* at 74. As to the tortious interference claims, we dismissed these against this Defendant because we found that such an action was not appropriate against a third party such as West Coast who was acting as an agent to a party to the contract. *Id.* at 78.

■ In determining whether to award sanctions for the filing of the complaint, we are required to look to the law at the time the complaint was filed to assess whether the claim was clearly baseless to a reasonable attorney. *Ford Motor Co.*, 930 F.2d at 289.

■ As to the embezzlement and tortious interference claims, they do not appear to have been completely baseless. The Plaintiffs asserted that the alleged failure to make pension and health care contributions constituted embezzlement. While we found their theory troubling, we noted that "the reported caselaw is silent as to whether the failure to remit monies to an employee benefit fund constitutes embezzlement." *Young*, 763 F.Supp. at 74. We analogized to a Middle District of Pennsylvania case [14] in which the court dealt with the question of whether a breach of fiduciary duty had occurred as a result of a failure to pay into an employee benefit program. *Id.* at 75. That court looked to the language of the collective bargaining agreement to determine whether the employer contributions owed to an employee benefits fund constituted assets of the fund rather than a debt owed to the fund.

We adopted the same approach and determined that the language of the collective bargaining agreement in this instance rendered the payments due to be debts owing rather than assets. *Id.* We concluded, therefore, that the failure to pay was not embezzlement. *Id.* Obviously our determination on this issue was not clearly delineated by prior caselaw. The Court concludes, therefore, that the Plaintiffs' embezzlement claims were not clearly unreasonable at the time the complaint was filed.

■ Our conclusion with respect to the tortious interference claim was grounded on legal principles also not clearly established at the time the complaint was filed. On that issue, we looked to California law. *Id.* at 77–78. Based on our review of the facts in light of that law, we concluded that in this case the independent contractor was protected from suit because there were no allegations that the Defendant acted other than to benefit its principal. *Id.* As there was no Delaware or Third Circuit precedent underlying this conclusion and because under the authority on which we relied an argument could have been made for such agent liability where the agent acts other than in the employer's best interests, this claim was also not clearly unreasonable.

■ As to the remaining RICO issues relating to mail and wire fraud, our April, 1991 order dismissing the claim is also instructive on the issue of whether the claims were clearly baseless at the time they were filed. As noted previously, we dismissed the RICO claims on the alternate grounds that there was a failure to plead deception or to plead the requisite pattern of racketeering activity. In our order, we initially concluded that of the two elements required to establish a pattern, relatedness and continuity, that there was no dispute as to the relatedness of the predicate acts. *Id.* at 71. Our conclusion that a pattern of racketeering activity was not sufficiently pled was based on the continuity element. *Id.* at 71–74. We looked to cases decided primarily in the period 1988 to 1991. *Id.* at 72–74. These cases indicated that to main-

---

14. *Galgay v. Gangloff*, 677 F.Supp. 295 (M.D.Pa. 1987).

tain a RICO claim, a plaintiff had to assert continuity in either an open-ended scheme, *i.e.*, a scheme continuing into the future or a substantial closed-ended scheme, *i.e.*, a completed scheme which spanned a substantial period. *Id.* Based on these cases and the fact that we found the complaint to assert a closed-ended scheme of 11 to 14 months duration, we concluded that the complaint failed to state a claim. *Id.* at 74.

Because we relied in our April, 1991 order on cases related to the pattern element of a RICO claim decided in 1989–1991, we cannot look to these cases to assess whether the filing of the claim based on the pattern of racketeering asserted here was reasonable. At the time of the filing of the complaint, *Barticheck v. Fidelity Union Bank,* 832 F.2d 36 (3rd Cir.1987), was controlling. In that case, the Third Circuit indicated that to meet the continuity element, an alleged activity which consists of a single scheme did not necessarily have to be open-ended, recognizing that a completed scheme often inflicts the greater harm. *Id.* at 39–40. The Court declined to adopt a formula for determining when the unlawful activity was sufficiently extensive to be continuous, concluding that "[t]his determination necessarily depends on the circumstances of the particular case." *Id.* at 40.

As neither the Third Circuit nor the Supreme Court had provided further clear guidance on this issue by the time the complaint here was filed, it was clearly reasonable for the Plaintiffs to conclude that the pattern alleged to have occurred over an 11 to 14 month period may have stated a cause of action.

The alternative basis for our determination that the complaint failed to state a RICO claim was that the complaint failed to allege a requisite predicate act under the mail and wire fraud statutes, *i.e.*, it did not allege deception by either misrepresentation, deceitful omission or other deceptive practice as part of the alleged scheme to defraud. *Young,* 763 F.Supp. at 71. While we acknowledged that there was a great deal of uncertainty as to what constituted deception, we indicated that "... given the candid nature of Defendants' conduct as alleged in Plaintiffs' amended complaint, this Court finds it troublesome to discover how Plaintiffs were deceived or even how Defendants intended to deceive them." *Id.* We went on to cite assertions made in the amended complaint that indicated that the Defendants had made known their intent to eliminate the union and that one of the Defendants repeatedly informed the Plaintiffs of the elements of the alleged scheme to defraud and that the Defendants advertised for strike replacement workers. *Id.*

The Plaintiffs assert in their brief in opposition to the motion for sanctions that because the Defendants' conduct was designed to deprive the Plaintiffs of their contractual rights and was done as part of the scheme to eliminate the union, that conduct was deceitful or at the least overreaching and therefore constituted a valid basis for the allegations. D.I. 50 at 8.

While we found the complaint lacking in its assertions on the element of deception, the filing of the action does not seem to merit the grant of sanctions. There had been and apparently continues to be uncertainty as to what is required to establish deception, a misrepresentation, a deceitful omission or merely other deceptive practices. *See Young,* 763 F.Supp. at 71. Even though we concluded that the complaint failed to adequately assert any of these, it did assert that an attempt to defraud the Plaintiffs occurred in the apparent "good faith" collective bargaining efforts which in reality were part of the alleged attempt to deny them the benefit of their contract and to eliminate the union. While not successful here, the allegations of meetings, letters and telephone conversations seemingly conducted pursuant to the collective bargaining efforts could arguably be colored as "deceptive practices" by a reasonable attorney and basing the complaint on such assertions was not clearly unreasonable.

Furthermore, given the complexity of the issues surrounding a RICO claim, the fact that the embezzlement claim and the pattern element were reasonable here despite their failure to state a RICO claim and the fact that deception was only one element to

the RICO claim, we conclude that it was not unreasonable to file a RICO complaint where there was an arguable basis on which to assert deception.[15]

We look finally to the Defendant's arguments that the requests for sanctions should be granted under 28 U.S.C. § 1927 [16] or the Court's inherent authority. A finding of willful bad faith is a prerequisite for imposing attorney's fees under section 1927. *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3rd Cir.1991) (citation omitted). To justify the imposition of excess costs of litigation upon an attorney, his conduct must be of an egregious nature stamped by bad faith that is violative of recognized standards in the conduct of litigation. *Id.* The section is directed at attorneys who willfully abuse judicial processes. *Id.* (citations omitted). In *Hackman*, the Third Circuit concluded that the District Court's award of attorney's fees against the plaintiff had been clearly erroneous and reversed that award. *Id.* at 243. The Third Circuit made this determination despite the fact that defendant's counsel had informed plaintiff's counsel that it intended to seek attorney's fees unless the complaint was withdrawn. *Id.* at 242. In so informing the plaintiff, defendant's counsel cited to a seemingly analogous First Circuit case where attorney's fees had been awarded.[17] *Id.* at 241. The Third Circuit in *Hackman* reversed the District Court's award of sanctions because *Cote* awarded attorney's fees under Title VII not section 1927 [18] and also because there was no unchallengeable defense in *Hackman* as there had been in *Cote*. *Id.* at 242–43.

The *Hackman* court found the arguments made there constituted an "arguable, although very weak, position" which was not so lacking in merit that its pursuit could be considered equivalent to bad faith. *Id.* at 243. The court indicated that "A claim is colorable, for purposes of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Id.* (citations omitted).

In this instance, our conclusion for the purposes of the Rule 11 motion that the claims here were not clearly unreasonable at the time the complaint was filed precludes a finding for the Defendant under section 1927 related to the filing of the complaint. Furthermore, the Plaintiffs' continued pursuit of the action following this Court's suggestions during the September 12, 1990 telephone conference and subsequent notification that the Defendants would seek sanctions unless the complaint was dropped also does not warrant sanctions under section 1927. The Defendant does not assert any facts related to the continued pursuit of the complaint by the Plaintiffs after the warnings were issued on which we could find the Plaintiffs were acting in bad faith in continuing their pursuit of their claims. In fact, the Defendant asserts only that the Plaintiffs should have abandoned their claim based on the warning that the Defendant would otherwise file a motion for sanctions. We cannot conclude that their continued pursuit of their action in the face of this warning constituted bad faith. Without some evi-

---

15. Because of the change in the law after the filing of the complaint, our comments during a September 12, 1990 conference call on the motion to dismiss wherein we suggested that the Plaintiffs should reconsider their position do not alter this conclusion. Those comments were clearly made in light of the principles announced in the *Helman v. Murry's Steaks, Inc.*, 742 F.Supp. 860 (D.Del.1990), and *Hindes v. Castle*, 740 F.Supp. 327 (D.Del.1990), *aff'd*, 937 F.2d 868 (3rd Cir.1991), cases which had not been decided at the time this complaint was filed. While the court in *O'Malley*, 896 F.2d at 709, cited to a similar warning in finding bad faith and supporting Rule 11 sanctions, because we relied on changed principles of law in mak-

ing our statements, this is not an analogous situation.

16. 28 U.S.C. § 1927 states that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct."

17. *Cote v. James River Corp.*, 761 F.2d 60 (1st Cir.1985).

18. The *Hackman* court indicated that sanctions under section 1927 require a finding of bad faith while sanctions imposed under Title VII do not require a finding of bad faith.

dence that the Plaintiffs' decision to forge ahead in pursuit of its action after receiving such warning was made in bad faith, we cannot award costs under section 1927. It is possible that the Plaintiffs here found some basis on which to distinguish their action from the caselaw which formed the basis for the Defendant's warning and this Court's suggestion that the Plaintiffs reconsider their position. Further, the Defendant indicated in its warning letter dated October 3, 1990, that it intended "[a]ssuming dismissal is granted ... to seek sanctions ... pursuant to F.R.C.P. 11, for instigating this frivolous action." D.I. 51 at 1. As we noted earlier, the standard for granting Rule 11 sanctions looks to the law at the time the complaint was filed not the current law. The Plaintiffs' decision to proceed after the warning may have been based on its position that under that standard its complaint had merit at the time it was filed. Further, even if we did find bad faith relating to the time following the warnings, a review of the docket here indicates that there were no motions filed or actions taken by Defendant after that time for which we could make an award of costs. Therefore we will not award costs and attorney's fees pursuant to 28 U.S.C. § 1927.

 Finally, a prerequisite for the exercise of the Court's inherent power to sanction is a finding of bad faith conduct. *Chambers v. Nasco, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Landon v. Hunt,* 938 F.2d 450 (3rd Cir.1991). In *Chambers,* the Court instructed that "[a] court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees...." *Chambers,* —— U.S. at ——, 111 S.Ct. at 2136. The Defendant contends that Plaintiffs acted with the intent to harass. D.I. 51 at 2, Ex. A at 3. Because we found the RICO claim to be reasonable and because we conclude that the decision to continue pursuit of this suit in the face of the Defendants' warnings did not constitute bad faith on the Plaintiffs' part, it does not appear

appropriate for the Court to exercise this power.

For the foregoing reasons, the motion for sanctions is denied.